# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

NOBEL LEARNING COMMUNITIES
d/b/a CHESTERBROOK ACADEMY,

        Defendant.

1:17-cv-366 (NLH/JS)

**OPINION**

**APPEARANCES**:

JORDAN MILOWE ANGER
DAVID V. SIMUNOVICH
OFFICE OF THE U.S. ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NJ 07102
    On behalf of Plaintiff

BONNIE M. HOFFMAN
ANDREW M. ERDLEN
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
20 BRACE ROAD
SUITE 201
CHERRY HILL, NJ 08034-2634
    On behalf of Defendant

**HILLMAN, District Judge**

This case concerns Defendant's alleged violation of Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12151-89.  Presently before the Court is Defendant's Motion to Stay and, Alternatively, for Partial Dismissal.  For the reasons that follow, Defendant's Motion to Stay is denied, as is Defendant's Motion for Partial Dismissal.

The Court takes its facts from Plaintiff's January 18, 2017 complaint.[1]  Defendant Nobel Learning Communities (NLC) is the owner and operator of Chesterbrook Academy ("Chesterbrook") in Moorestown, New Jersey.  Chesterbrook offers daycare services and an educational foundation program for young children.  M.M., born on July 11, 2011 with Down syndrome, enrolled at Chesterbrook on January 5, 2012.

At Chesterbrook, diaper-changing services are provided to children enrolled in its "Infants," "Toddlers," "and "Beginners" programs.  Diaper-changing services are not provided to children enrolled in its "Intermediates" or "Pre-K" programs.

In December 2014, Chesterbrook informed M.M.'s parents of its intention to move M.M. into the "Intermediates" program.  At that time, M.M. still required diapers.  M.M. was moved into the "Intermediates" program on January 21, 2015.  Chesterbrook worked with M.M. to try to get her toilet trained, setting a deadline pursuant to corporate policy for M.M. to be toilet trained by April 1, 2015.

On March 26, 2015, Chesterbrook informed M.M.'s parents that M.M. was being expelled effective April 1, 2015 because she

---

[1]    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under Title III of the ADA.

was not toilet trained.  M.M.'s last day at Chesterbrook was March 31, 2015.

Plaintiff brought a claim under Title III of the ADA asking for a declaration that Defendant violated Title III of the ADA, for Defendant to be enjoined from engaging in discrimination against individuals with disabilities and from failing to comply with Title III of the ADA, for an award of compensatory damages to M.M. and M.M.'s parents, and for a civil penalty against Defendant to vindicate the public interest.  Defendant filed a Motion to Stay or, Alternatively, for Partial Dismissal on March 24, 2017.

## II.

Defendant asks the Court to stay this action under the Colorado River abstention doctrine, arguing there is similar litigation in state court.  In October 2016, the Director of the New Jersey Division on Civil Rights filed a complaint against NLC, alleging a violation of the New Jersey Law Against Discrimination (NJLAD) based on Chesterbrook's treatment of M.M. This case and the state court case arise out of the same factual allegations.

> Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues."  If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present.

_Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc._, 571
F.3d 299, 307-08 (3d Cir. 2009) (alteration in original) (first
quoting _Yang v. Tsui_, 416 F.3d 199, 204 n.5 (3d Cir. 2005); and
then quoting _Spring City Corp. v. Am. Bldgs. Co._, 193 F.3d 165,
171 (3d Cir. 1999)).  "The doctrine is to be narrowly applied in
light of the general principle that 'federal courts have a
strict duty to exercise the jurisdiction that is conferred upon
them by Congress.'"  _Id._ at 307 (quoting _Quackenbush v. Allstate
Ins. Co._, 517 U.S. 706, 717 (1996)).

The Court first looks to whether the federal and state
cases are parallel.  _See, e.g._, _Trent v. Dial Med._, 33 F.3d 217,
223 (3d Cir. 1994).  "Generally, cases are parallel so as to
justify abstention under _Colorado River_ when they involve the
same parties and claims."  _Id._  However, the Third Circuit has
applied _Colorado River_ abstention even where the parties were
not "perfectly identical," but were "substantially the same."
_Barron v. Caterpillar, Inc._, No. 95-5149, 1996 WL 368335, at *2
n.2 (E.D. Pa. June 26, 1996); _accord_ _Mamouzette v. Jerome_, No.
13-117, 2017 WL 3083628, at *8 (D.V.I. July 19, 2017)
("[C]omplete identity of parties is not required to satisfy the
first prong.  Courts look past the names and number of parties
in determining whether there is an identity of parties for
purposes of the abstention doctrine."); _Glades Pharm., LLC v._

Call, Inc., No. 04-4259, 2005 WL 563726, at *7 (E.D. Pa. Mar. 9, 2005) ("Two actions may involve different parties and still be parallel so long as there is a substantial similarity between the two actions.").

In this action, Plaintiff is the United States of America and Defendant is NLC.  In the state court action, the plaintiff is the Director of the New Jersey Division on Civil Rights, and the defendant is also NLC.  Accordingly, the defendants are the same, but the plaintiffs are different – one a state entity and one a federal entity.  Defendant argues that, while the two cases "are nominally brought by different parties," that "the real party in interest is indisputably M.M."  Plaintiff counters that it is not a party to the state litigation, and this action was filed on behalf of the United States of America, not on behalf of M.M. or her parents.  This Court agrees that this is significant.

The plaintiffs in the state and federal actions are different, representing separate and distinct government entities.  While the discrimination alleged was directed toward the same individual, this does not affect the parties listed on the complaint in the sense their interests are broader.  Indeed, neither are actions where a party is bringing suit on behalf of another.  While the Third Circuit has not required complete identity of parties, this Court's purview of the case law

reveals that this leniency is adopted largely for where the parties are switched, such that a plaintiff in the federal action is a defendant in the state action (and vice versa)[2] and where there are additional parties to one action that are not included in the other, but where the parties are otherwise identical.[3] This is not such a case. This Court has not found a case where circumstances similar to these warranted a finding that the parties were "essentially identical," and this Court is not convinced that such a finding would be appropriate.

Further, this Court does not find the federal and state actions concern the same claims. "The courts have been cautious in finding actions that are merely similar to be duplicative." Certain Underwriters at Lloyds, London v. Ross, No. 98-1037,

---

[2] For instance, in Laboon v. Goldberg, No. 06-1429, 2007 WL 543007 (W.D. Pa. Feb. 18, 2007), the court found "[t]he parties [were] substantially the same" where the plaintiff in the federal action was the defendant in the state action and the defendant in the federal action was the plaintiff in the state action. Id. at *2.

[3] For instance, the Third Circuit in Trent found the defendants were "essentially identical" where the federal action included the same defendant as the state action, but the state action included two additional defendants. 33 F.3d at 224. The Third Circuit also found the plaintiffs were "effectively the same" where the federal plaintiff was part of a class in the state action. Id. In Mamouzette, the parties were identical except additional defendants were included in the federal action that were not named in the state action, which the court found to be "of no import," particularly where the only parties relevant to the pending motion were parties to both actions. 2017 WL 3083628, at *8.

1998 WL 372304, at *2 (E.D. Pa. 1998). "[W]hile certain issues to be litigated in the . . . federal claim may be identical to issues that have been or will be raised . . . in state court, the lack of identity of all issues necessarily precludes Colorado River abstention." Univ. of Md. v. Peat Marwick Main & Co., 923 F.2d 265, 276 (3d Cir. 1991).

The federal complaint alleges a violation of the ADA, whereas the state complaint alleges a violation of the NJLAD. There is no doubt the federal and state actions involve common facts, and that the legal analyses will have much overlap. However, "[t]he Colorado River analysis . . . turns on the claims brought, rather than upon whether or not those claims can trace their origin to a common nucleus of operative facts." Oliver v. Sid Bernstein, Ltd., No. 96-4471, 1997 WL 135751, at *4 (E.D. Pa. Mar. 11, 1997). Where two cases "employ[] substantially different 'approaches' and might 'achieve potentially different results,'" Colorado River abstention is inappropriate. See Trent, 33 F.3d at 224. This is such a case. Plaintiff's claim in the federal action falls under an entirely different statute than the state action. While the state statute often borrows from the federal statute, that does not make them identical, and relief under one statute does not

require relief under the other.[4] Nor does it appear the remedies are the same.[5]

In any event, a full analysis of the <u>Colorado River</u> factors fails to convince this Court that extraordinary circumstances are present here, meriting abstention.

> The factors which govern a district court's exercise of
> discretion in deciding whether to abstain under <u>Colorado
> River</u> are:
>
> > (1) Which court first assumed jurisdiction
> > over property involved, if any;

---

[4]   This Court is not persuaded by <u>Bacot v. N.Y. State Dep't of Soc. Servs.</u>, 746 F. Supp. 388 (S.D.N.Y. 1990), which Defendant argues is analogous to this case. In <u>Bacot</u>, the plaintiff filed a complaint in New York state court alleging violations of the New York Human Rights Law. <u>Id.</u> at 390. The plaintiff then filed suit in federal court, alleging violations of Title VII of the Civil Rights Act of 1964. <u>Id.</u> Both cases rested on the same factual allegations. <u>Id.</u> The Southern District of New York noted that "federal and state courts have concurrent jurisdiction over Title VII cases." <u>Id.</u> It decided: "[P]laintiff may now press this Title VII claim . . . in the action in the New York State Supreme Court," unless "the state court has decided not to hear plaintiff's cause of action arising under Title VII." <u>Id.</u> Unlike this case, however, <u>Bacot</u> involved the same plaintiff, in which case it was not unreasonable for the Southern District of New York to note the availability of the federal claim in state court. The plaintiff in this case is not the plaintiff in state court and therefore does not have the same option.

[5]   On July 18, 2017, the state court granted the defendant's motion for partial dismissal of the plaintiff's complaint. The decision dismissed "all counts as they relate to compensatory damages, penalties, and punitive damages," finding those counts were beyond the authority conferred on the Director of the New Jersey Division on Civil Rights. The counts requesting injunctive relief remained. A larger range of potential remedies in this action undermines the argument for abstention.

<blockquote>
(2) Whether the federal forum is inconvenient;

(3) The desirability of avoiding piecemeal litigation;

(4) The order in which the respective courts obtained jurisdiction;

(5) Whether federal or state law applies; and

(6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.
</blockquote>

Id. at 225.[6]  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818-19 (1976).

As this action does not involve a property dispute, factor one is inapplicable.  Defendant also concedes factor two is neutral because both cases are pending in New Jersey.[7]  As to factor three, all parallel litigation involves some level of

---

[6]    "Only the first four of these factors were delineated in Colorado River, the other two are drawn from Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 . . . (1983) . . . ."  Nationwide Mut. Fire Ins. Co., 571 F.3d at 308 n.10.

[7]    Plaintiff argues the second factor weighs against a stay because NLC has facilities in New Jersey and many witnesses are located in New Jersey.  However, as both forums are in the State of New Jersey, this Court does not find the factor tilts in any direction.

piecemeal litigation.  For that reason, "the mere possibility of piecemeal litigation [does not] justif[y] Colorado River abstention; rather, there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review." Ryan v. Johnson, 115 F.3d 193, 198 (3d Cir. 1997); accord Spring City Corp., 193 F.3d at 171-72 ("Colorado River abstention must be grounded on more than just the interest in avoiding duplicative litigation.").  Plaintiff argues that, because state courts have concurrent jurisdiction over ADA claims, see, e.g., Krouse v. Am. Sterilizer Co., 872 F. Supp. 203, 205-06 (W.D. Pa. 1994), this demonstrates Congress's desire to avoid piecemeal litigation.  The Court does not find this equates to "a strongly articulated congressional policy against piecemeal litigation."

While the state action was filed first, federal law applies to the federal action, and state law applies to the state action.  And while the causes of action are similar, the laws are distinct.  As to whether the state court proceeding would adequately protect the federal plaintiff's rights, the United States Attorney has a vested interest in litigating this case, as "the Attorney General has the primary responsibility for enforcing the ADA." Caruso v. Blockbuster-Sony Music Entm't Ctr., 968 F. Supp. 210, 215 (D.N.J. 1997); accord United States v. AMC Entm't, Inc., 245 F. Supp. 2d 1094, 1099 (C.D. Cal. 2003)

10

("The Department of Justice . . . , through the Attorney General, is charged with enforcing Title III."); Hoepfl v. Barlow, 906 F. Supp. 317, 324 (E.D. Va. 1995) ("[T]he scheme Congress enacted to enforce the ADA envisions action by the Attorney General to obtain relief to benefit the disabled community at large."); see 42 U.S.C. § 12188(b)(1)(B).

This Court reiterates that the Colorado River abstention doctrine "is to be narrowly applied." Nationwide Mut. Fire Ins. Co., 571 F.3d at 307 (quoting Quackenbush, 517 U.S. 706). In determining whether a stay is appropriate, this Court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Moses H. Cone Mem'l Hosp., 460 U.S. at 25-26. This is not such an exceptional case.

The Court similarly declines to exercise its "inherent authority" to stay this proceeding. "In determining whether to grant a stay, courts in the Third Circuit have taken into account a number of factors, including (1) the length of the stay; (2) the balance of harm to the parties; (3) the interests of the public; and (4) the interests of judicial economy." United States v. $1,879,991.64 Previously Contained in Sberbank

of Russia's Interbank, 185 F. Supp. 3d 493, 500 (D.N.J. 2016).
This Court is not so convinced that consideration of these
factors requires a stay of this proceeding.  Accordingly, this
Court denies Defendant's Motion to Stay.

**III.**

Having determined that a stay of the federal action is
inappropriate, this Court now considers Defendant's alternate
argument for partial dismissal.  Defendant argues collateral
estoppel applies to Plaintiff's associational discrimination
claim based on two Eastern District of Pennsylvania decisions in
2009 and 2010.  In the 2009 decision, the Eastern District of
Pennsylvania considered a motion to dismiss the complaint
brought by the defendant, NLC, against the plaintiff, the United
States.  United States v. Nobel Learning Cmtys., Inc., 676 F.
Supp. 2d 379, 380 (E.D. Pa. 2009).  In its complaint, the United
States claimed NLC discriminated against disabled children in
violation of the ADA.  Id.  Part of its complaint consisted of a
claim of associational discrimination suffered by the families
of the disabled children.  Id.  The Eastern District of
Pennsylvania found Title III of the ADA did not allow a family
to recover "for indirect consequences associated with a child's
exclusion from an NLC school."  Id. at 386.  Accordingly, the
court granted NLC's motion to dismiss as to the plaintiff's
allegation of associational discrimination.  Id. at 388.

In the 2010 decision, the Eastern District of Pennsylvania again considered this issue after the United States moved to amend its complaint. United States v. Nobel Learning Cmtys., Inc., No. 09-1818, 2010 WL 1047730, at *1 (E.D. Pa. Mar. 19, 2010). The proposed amended complaint "include[d] new factual allegations about the parents of the . . . children with disabilities," asserting that the parents "sought to contract with [the defendant] for daycare services that [were] marketed to them for their own benefit, and that the parents were denied the ability to contract for these services because of the parents' association with their disabled children." Id. at *2. The court denied the motion to amend the complaint, finding an amendment would be futile as to the associational discrimination claim. Id. at *4.

The Eastern District of Pennsylvania reasoned as follows:

[T]o assert a claim of associational discrimination, a plaintiff must allege that he or she experienced direct discrimination because of his or her association with a disabled person. Such discrimination requires a separate and distinct denial of a benefit or service to a non-disabled person; it may not be premised on a derivative benefit or harm based on treatment towards a disabled person.

Id. (citations omitted). The court found "[a]ny benefit to parents premised on time free from their children is not a benefit that is separate and distinct from the benefit to the child in attending daycare." Id. at *5. "Although parents

13

enjoy a derivative benefit in sending their children to daycare, and suffer a derivative harm due to the attendant consequences of a child's disenrollment or unenrollment, daycare is not a service for parents because children, not parents, partake in the daycare activities." Id.

For collateral estoppel to apply, four elements must be satisfied: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." Burlington N. R.R. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995) (alterations in original) (quoting In re Graham, 973 F.3d 1089, 1097 (3d Cir. 1992)).

Plaintiff concedes the first two prongs have been satisfied. However, Plaintiff argues collateral estoppel is inappropriate because (1) the 2009 and 2010 decisions were not sufficiently firm to have preclusive effect and (2) the parties settled the Eastern District of Pennsylvania case and expressly allowed Plaintiff to sue Defendant for violations of the ADA. The Court first considers the two Eastern District of Pennsylvania cases.

A "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." In re Brown, 951 F.2d

564, 569 (3d Cir. 1991) (quoting 1 Restatement (Second) of Judgments § 13 (1982)). "In determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." Id. Finality for purposes of collateral estoppel is a "'pliant' concept" which "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." Id. (quoting Dyndul v. Dyndul, 620 F.2d 409, 412 n.8 (3d Cir. 1980)).

"Ordinarily, an order granting a motion to dismiss is an appealable final order . . . ." Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 (3d Cir. 1991). The District of New Jersey has previously stated that "[w]hen a court grants a motion to dismiss and expresses its reasons for doing so in a written opinion, . . . the decision is considered final for purposes of collateral estoppel." Rose v. Schultz, No. 03-1684, 2007 WL 1160348, at *5 (D.N.J. Apr. 17, 2007). However, in Rose v. Schultz, the grant of a motion to dismiss disposed of the entire complaint. Here, while the Eastern District of Pennsylvania disposed of the associational discrimination claim, other claims remained, and thus the litigation was ongoing. Thus, these decisions do not constitute final judgments. L.R.

<u>v. Manheim Twp. Sch. Dist.</u>, 540 F. Supp. 2d 603, 608 (E.D. Pa. 2008) ("A partial grant of a motion to dismiss is not a final judgment, and thus is generally not appealable except by an interlocutory appeal under 28 U.S.C. § 1292."). Standing alone, they are not sufficiently firm to allow for collateral estoppel.

Following the Eastern District of Pennsylvania decisions, in January 2011, the United States and NLC entered into a Settlement Agreement, which provided that NLC would implement a non-discrimination policy, publicize that policy to its employees, and provide appropriate training, with mandatory reporting to the United States. It also provided NLC would pay $215,000 to the named individuals in the complaint. The Settlement Agreement resolved all of the allegations in the complaint and was to remain in effect for two years.

The Settlement Agreement does not provide for collateral estoppel to apply to the Eastern District of Pennsylvania decisions. Rather, the Settlement Agreement provided:

> In consideration of, and consistent with all the terms of the Settlement Agreement, the United States agrees to refrain from . . . pursuing further legal proceedings regarding . . . legal theories raised or that could have been asserted based on the facts set forth in the First Amended Complaint.

The Settlement Agreement was to remain in effect for two years, and thus this bar on pursuing further legal proceedings has long since ended. The Settlement Agreement also provided,

16

in pertinent part: "Nothing in this Settlement Agreement shall prevent the United States from seeking redress of violations of this Settlement Agreement or exercising its enforcement authority pursuant to 42 U.S.C. § 12188 with respect to violations of the ADA that occur after the Effective Date of this Settlement Agreement." Accordingly, the Settlement Agreement not only did not express an intent for collateral estoppel to apply to the earlier Eastern District of Pennsylvania decisions, but explicitly allowed Plaintiff to bring new claims after the two year period of the Settlement Agreement ended. Accordingly, the Settlement Agreement allowed for Plaintiff to bring an associational discrimination claim in this case.

Having determined that collateral estoppel does not apply, the Court now considers the merits of Defendant's motion to dismiss the associational discrimination claim. The ADA provides: "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E); accord 28 C.F.R. 36.205 ("A public accommodation shall not exclude or otherwise deny equal goods, services, facilities, privileges, advantages,

accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.").

The Eastern District of Pennsylvania held that, "to assert a claim of associational discrimination, a plaintiff must allege that he or she experienced direct discrimination because of his or her association with a disabled person." <u>Nobel Learning Cmtys., Inc.</u>, 2010 WL 1047730, at *4. "Such discrimination requires a separate and distinct denial of a benefit or service to a non-disabled person; it may not be premised on a derivative benefit or harm based on treatment towards a disabled person." <u>Id.</u>

Even outside of the Eastern District of Pennsylvania, "[c]ourts have interpreted the ADA and its prohibition on associational discrimination to require that the plaintiff bringing an associational discrimination claim suffer some specific, separate, and direct injury as a result of his association with the disabled individual." <u>Micek v. City of Chicago</u>, No. 98 C 6757, 1999 WL 966970, at *3 (N.D. Ill. Oct. 4, 1999). In <u>Micek</u>, a father, mother, and son brought a claim under the ADA after the mother and son, who had significant hearing loss, were denied certain coverage related to their hearing loss. <u>Id.</u> at *1. The court found the father, "who was

himself denied no benefit, suffered no cognizable separate injury sufficient to gain standing to sue." Id. at *4.

Similarly, in Simenson v. Hoffman, a child's parents brought suit against a medical center which refused to treat the child for a respiratory infection, allegedly on the basis of his skin disorder. No. 95 C 1401, 1995 WL 631804, at *1 (N.D. Ill. Oct. 24, 1995). The court found the parents "were not at the medical center for any purpose other than to seek treatment for [the child]. [The child]'s ejection, and that of his parents, was merely the final act in the decision to deny him medical treatment." Id. at *6. Accordingly, the court found there could be no claim of associational discrimination. Id.

While the Court agrees with the Eastern District of Pennsylvania's reasoning that a plaintiff must experience direct discrimination, and that the benefit must be separate and distinct and not merely derivative of the benefit to a disabled person, the Court disagrees with the Eastern District of Pennsylvania's determination that daycare services are merely a derivative benefit for parents. Daycare services, while centered around the child, are as much a benefit to parents. It is a service, agreed to between the parents and the institution, which provides parents with otherwise unavailable time apart from their children. One can argue in a sense that the disabled child's benefit from daycare services is derivative of the

parents' benefit.

In making this determination, the Court finds persuasive the court's reasoning in S.K. v. North Allegheny School District, 146 F. Supp. 3d 700 (W.D. Pa. 2015). In S.K., a school district provided transportation for students from their respective schools to daycare facilities within the district's boundaries. Id. at 704. The only daycare facility with the ability to care for the severely disabled child's needs was outside the district. Id. Accordingly, the district refused to transport the child. Id.

The court distinguished the Eastern District of Pennsylvania decisions, stating "the only reason [the child] was in daycare was so that [the mother] could work. Based upon that allegation, the court . . . would have to infer plausibly that there was a direct benefit to [the mother] provided by the transportation service." Id. at 713 n.4. Accordingly, the court found associational discrimination applicable. Id. at 720.

While Plaintiff did not plead that the only reason M.M. was in daycare was so that M.M.'s parents could work, and while the factual allegations of the harm to the parents are admittedly barebones, it is axiomatic that daycare services exist for parents to have temporary relief from providing constant care for a young child, regardless of what a parent might use that

time for.  Given the broad statutory language creating an associational cause of action and the remedial purpose of the statute, the Court deems the denial of this type of service sufficient to state a valid claim asserted by a parent or other legal custodian.

Plaintiff cites <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173 (11th Cir. 2007), <u>Rothschild v. Grottenthaler</u>, 907 F.2d 286 (7th Cir. 1990), and <u>Bravin v. Mount Sinai Medical Center</u>, 58 F. Supp. 2d 269 (S.D.N.Y. 1999).  The Court finds all these cases analogous to the instant action.

In <u>Sheely</u>, a mother with a service dog was denied the opportunity to accompany her child into the room where the child's MRI would be administered.  505 F.3d at 1178.  The Eleventh Circuit held that the parent's "benefit" of accompanying the child could be cognizable under the Rehabilitation Act of 1973, 29 U.S.C. § 794.  <u>Id.</u> at 1187 n.14.

In <u>Rothschild</u>, deaf parents were frequently invited to their children's school for back to school night, meetings with teachers and counselors, and orientation meetings, designed for parents of schoolchildren.  907 F.2d at 288.  The deaf parents frequently did not attend these meetings because the school did not provide a sign language interpreter.  <u>Id.</u>  The defendant argued "public schools are for children, not their parents."  <u>Id.</u> at 290.  The court disagreed and found the parents were

unfairly excluded from these "parent-oriented activities."  Id.

In Bravin, a deaf father moved for a preliminary injunction to compel the defendant to make available a sign language interpreter for meetings between the father and the doctors while his son was a patient at defendant's facility.  58 F. Supp. 2d at 271.  The defendant was providing a service to expecting mothers and their partners in the form of Lamaze classes.  Id. at 272.  Regardless of whether an expecting mother could attend the class by itself, the court found "the fundamental fact" remained that the service was being provided to the mothers and their partners.  Id.

In all three cases cited by Plaintiff, the primary beneficiary was the non-disabled individual, as is the case here.  In Sheely, the parent was denied the opportunity to accompany the child, while the child was the individual receiving treatment at the facility.  In Rothschild, the parents were precluded from attending parent-oriented activities at the school, while the child was the individual enrolled in the school.  In Bravin, while the mother was the focal point of the class, the class was designed for inclusion with the partner. These cases all persuade the Court that, while a service can be provided to a child, an at least co-equal benefit – separate and distinct from any benefit to the disabled child – can be

recognized for the parent.[8]  At this stage of the proceedings,
Plaintiff has alleged sufficient facts to make out a plausible
claim for associational discrimination.  Accordingly, that claim
will not be dismissed at this time.

Finally, Defendant argues Plaintiff's request for
injunctive relief is overbroad, as Plaintiff "alleges a
discrete, isolated violation of the ADA relating to only M.M.
and her parents, and yet seeks to enjoin Chesterbrook Academy
and all of its officers, agents, and employees from violating
the ADA."  Defendant's argument is twofold: (1) Plaintiff
alleges discrimination against only M.M. and her parents and (2)
there is no allegation Plaintiff will be subject to a future
injury.

"Because the remedy for a private ADA Title III violation
is injunctive relief, courts look beyond the alleged past
violation and consider the possibility of future violations."
Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa.
2013).  "Plaintiffs seeking prospective injunctive relief 'must
demonstrate a "real and immediate threat" of injury in order to
satisfy the "injury in fact" requirement.'"  Id. (quoting Access

---

[8]     These cases differ greatly from Micek and Simenson.  In
Micek, coverage was denied to the mother and son; the father was
not denied anything.  1999 WL 966970, at *1.  In Simenson, the
disabled child, who was the patient, was removed from the
medical center and consequently so were his parents – this was
merely derivative.  1995 WL 631804, at *1, *6.

4 All, Inc. v. Absecon Hosp. Corp., No. 04-6060, 2006 WL 3109966, at *5 (D.N.J. Oct. 30, 2006)). "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

While the complaint does not make any allegations with regard to future violations of Title III of the ADA, either directed at M.M., her parents, or at others, the Court views the determination of this issue to be premature. Injunctions in any form are a form of remedy, and remedies only follow a successful claim. Accordingly, this issue is not ripe for adjudication in a matter still in the pleading stages.

There is no question that the statute includes injunctive relief as a possible remedy, 42 U.S.C. § 12188(b)(2)(A), and here the claim is brought not by an individual plaintiff but by the United States under a statute in which Congress gave the Attorney General a broad mandate to investigate violations, undertake periodic reviews of covered entities, certify compliance, and bring civil actions to remedy violations. Id. § 12188. This case is in essence an enforcement action suggesting, at least in the view of Plaintiff, "an issue of general public importance." Id. § 12188(b)(1)(B).

The Court has no occasion to assess whether that viewpoint

is correct or any other aspect of the merits of Plaintiff's case, but the earlier skirmish in the Eastern District of Pennsylvania, the resulting settlement agreement, and this action taken together suggest Plaintiff's concerns over the operations of Defendant and its ongoing compliance with the relevant statute are not new.  The Court is simply unable to say that injunctive relief should be precluded under such circumstances and certainly not before full discovery and the adjudication of the claims the Court has allowed to proceed.

An appropriate Order will be entered.


Date:  October 19, 2017            s/ Noel L. Hillman_____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.