# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA,　　　　1:17-cv-366 (NLH/JS)

　　　　　Plaintiff,　　　　　**OPINION**

　　　v.

NOBEL LEARNING COMMUNITIES
d/b/a CHESTERBROOK ACADEMY,

　　　　　Defendant.

---

**APPEARANCES**:

JORDAN MILOWE ANGER
DAVID V. SIMUNOVICH
OFFICE OF THE U.S. ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NJ 07102
　　　On behalf of Plaintiff

CHARLOTTE L. LANVERS
U.S. DEPARTMENT OF JUSTICE
1425 NEW YORK AVE., NW
ROOM 4002
WASHINGTON, DC 20005
　　　On behalf of Plaintiff

BONNIE M. HOFFMAN
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
ONE LOGAN SQUARE
27TH FLOOR
PHILADELPHIA, PA 19103
　　　On behalf of Defendant

ANDREW M. ERDLEN
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
20 BRACE ROAD
SUITE 201
CHERRY HILL, NJ 08034-2634
　　　On behalf of Defendant

**HILLMAN, District Judge**

This case concerns Defendant Nobel Learning Communities (NLC)'s alleged violation of Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12151-89.  On October 19, 2017, the Court entered an Order denying Defendant's Motion to Stay, or Alternatively, for Partial Dismissal in its entirety.  Before the Court is Defendant's Motion for Reconsideration, Defendant's Alternative Motion for Certification of Appeal, and Defendant's Motion for Leave to File Reply.  For the reasons that follow, the Court will grant Defendant's Motion for Leave to File Reply, deny Defendant's Motion for Reconsideration, and deny Defendant's Alternative Motion for Certification of Appeal.

## I. Background

The Court takes its facts from its October 19, 2017 Opinion in this matter.  Defendant is the owner and operator of Chesterbrook Academy ("Chesterbrook") in Moorestown, New Jersey. Chesterbrook offers daycare services and an educational foundation program for young children.  M.M., born in July 2011 with Down syndrome enrolled at Chesterbrook on January 5, 2012.

At Chesterbrook, diaper-changing services are provided to children enrolled in its "Infants," "Toddlers," "and "Beginners"

programs.  Diaper-changing services are not provided to children enrolled in its "Intermediates" or "Pre-K" programs.

In December 2014, Chesterbrook informed M.M.'s parents of its intention to move M.M. into the "Intermediates" program.  At that time, M.M. still required diapers.  M.M. was moved into the "Intermediates" program on January 21, 2015.  Chesterbrook worked with M.M. to try to get her toilet trained, setting a deadline pursuant to corporate policy for M.M. to be toilet trained by April 1, 2015.

On March 26, 2015, Chesterbrook informed M.M.'s parents that M.M. was being expelled effective April 1, 2015 because she was not toilet trained.  M.M.'s last day at Chesterbrook was March 31, 2015.

Plaintiff filed its Complaint in federal court on January 18, 2017.[1]  Plaintiff brought a claim under Title III of the ADA asking for a declaration that Defendant violated Title III of the ADA, for Defendant to be enjoined from engaging in discrimination against individuals with disabilities and from failing to comply with Title III of the ADA, for an award of compensatory damages to M.M. and M.M.'s parents, and for a civil penalty against Defendant to vindicate the public interest.

---

[1]    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under Title III of the ADA.

Defendant filed a Motion to Stay or, Alternatively, for Partial Dismissal on March 24, 2017, which this Court denied on October 19, 2017.

The Court briefly summarizes it October 19, 2017 Opinion. After denying Defendant's request to stay this action under Colorado River abstention,[2] the Court considered Defendant's arguments in support of partial dismissal. Defendant argued collateral estoppel applied to Plaintiff's associational discrimination claim based on two Eastern District of Pennsylvania decisions in 2009 and 2010. In the 2009 decision, a judge in the Eastern District of Pennsylvania considered a motion to dismiss the complaint brought by the defendant, NLC, against the plaintiff, the United States. United States v. Nobel Learning Cmtys., Inc., 676 F. Supp. 2d 379, 380 (E.D. Pa. 2009). In its complaint, the United States claimed NLC discriminated against disabled children in violation of the ADA. Id. Part of its complaint consisted of a claim of associational discrimination suffered by the families of the disabled children. Id. The court in the Eastern District of Pennsylvania found Title III of the ADA did not allow a family to recover "for indirect consequences associated with a child's exclusion from an NLC school." Id. at 386. Accordingly, the

---

[2] The Court's decision to deny the Motion to Stay is not being challenged.

court granted NLC's motion to dismiss as to the plaintiff's allegation of associational discrimination.  Id. at 388.

In the 2010 decision, same court again considered this issue after the United States moved to amend its complaint. United States v. Nobel Learning Cmtys., Inc., No. 09-1818, 2010 WL 1047730, at *1 (E.D. Pa. Mar. 19, 2010).  The proposed amended complaint "include[d] new factual allegations about the parents of the . . . children with disabilities," asserting that the parents "sought to contract with [the defendant] for daycare services that [were] marketed to them for their own benefit, and that the parents were denied the ability to contract for these services because of the parents' association with their disabled children."  Id. at *2.  The court denied the motion to amend the complaint, finding an amendment would be futile as to the associational discrimination claim.  Id. at *4.

The court reasoned as follows:

> [T]o assert a claim of associational discrimination, a plaintiff must allege that he or she experienced direct discrimination because of his or her association with a disabled person.  Such discrimination requires a separate and distinct denial of a benefit or service to a non-disabled person; it may not be premised on a derivative benefit or harm based on treatment towards a disabled person.

Id. (citations omitted).  The court found "[a]ny benefit to parents premised on time free from their children is not a benefit that is separate and distinct from the benefit to the

5

child in attending daycare." Id. at *5. "Although parents enjoy a derivative benefit in sending their children to daycare, and suffer a derivative harm due to the attendant consequences of a child's disenrollment or unenrollment, daycare is not a service for parents because children, not parents, partake in the daycare activities." Id.

This Court applied the following test in deciding whether collateral estoppel applied: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." Burlington N. R.R. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995) (alterations in original) (quoting In re Graham, 973 F.3d 1089, 1097 (3d Cir. 1992)). Noting that Plaintiff conceded the first two prongs were satisfied, the Court found the Eastern District of Pennsylvania decisions did not constitute final judgments. The Court thus found those decisions, standing alone, insufficiently firm to allow for collateral estoppel.

The Court further addressed a January 2011 Settlement Agreement entered between the United States and NLC, which provided that NLC would implement a non-discrimination policy, publicize that policy to its employees, and provide appropriate training, with mandatory reporting to the United States. It

also provided NLC would pay $215,000 to the named individuals in the complaint. The Settlement Agreement resolved all of the allegations in the complaint and was to remain in effect for two years.

The Court determined the Settlement Agreement also did not bar Plaintiff's associational discrimination claim. The Court found the Settlement Agreement did not express an intent for collateral estoppel to apply to the earlier Eastern District of Pennsylvania decisions, and that it explicitly allowed Plaintiff to bring new claims after the two-year period of the Settlement Agreement ended.

The Court then considered the merits of Plaintiff's associational discrimination claim. The Court began by recognizing that an associational discrimination claim requires a separate and distinct denial of a benefit or service to the non-disabled person. Simply being denied a derivative benefit or service is insufficient. The Court determined that, while daycare services center around the child, they are as much a benefit to parents. The Court reasoned: "It is a service, agreed to between the parents and the institution, which provides parents with otherwise unavailable time apart from their children. One can argue in a sense that the disabled child's benefit from daycare services is derivative of the parents' benefit."

Finally, the Court determined that Plaintiff's request for injunctive relief was not ripe for adjudication at the pleading stage. The Court thus denied the motion in its entirety. On November 2, 2017, Defendant filed a Motion for Reconsideration and an Alternative Motion for Certification of Appeal. Plaintiff filed its opposition on November 20, 2017. On November 27, 2017, Defendant filed a Motion for Leave to File Reply to the Motion for Reconsideration, along with a reply to the Alternative Motion for Certification of Appeal.

## II. Motion for Leave to File Reply

The Court begins by briefly addressing Defendant's Motion for Leave to File Reply. Reply briefs are not permitted in support of a motion for reconsideration unless the Court grants leave to file such a reply. Local Civil Rule 7.1(d)(3) ("No reply papers shall be filed, unless permitted by the Court, relating to the following motions: . . . . Reconsideration under L.Civ.R. 7.1(i) . . . ."). Defendant filed such a request for leave to file a reply on November 27, 2017.

Defendant's motion argues Plaintiff's opposition "mischaracterizes the positions taken by Chesterbrook in its Moving Brief and presents new arguments to which Chesterbrook respectfully requests an opportunity to respond." The Court finds Defendant's request was advanced in good faith and sought

to respond to Plaintiff's opposition and not impermissibly advance new arguments or repeat its initial arguments. See Bayer AG v. Schein Pharm., 129 F. Supp. 2d 705, 716 (D.N.J. 2001) ("It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted." (quoting Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998))); accord Dana Transp., Inc. v. Ableco Fin., LLC, No. 04-2781, 2005 U.S. Dist. LEXIS 18086, at *16 (D.N.J. Aug. 17, 2005) ("The purpose of the reply brief is to respond to the opposition brief or explain a position that the respondent has refuted."). Accordingly, the Court will grant Defendant's Motion for Leave to File Reply. The Court considers the reply brief, filed simultaneously with Defendant's Motion, in considering Defendant's Motion for Reconsideration.[3]

### III. Motion for Reconsideration

#### A. Standard of Review

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A judgment may be

---

[3]     Plaintiff "takes no position on Defendant's filing."

altered or amended only if the party seeking reconsideration
shows: (1) an intervening change in the controlling law; (2) the
availability of new evidence that was not available when the
court rendered its decision; or (3) the need to correct a clear
error of law or fact or to prevent manifest injustice.  Id.

Defendant's motion argues for reconsideration solely based
on clear error.  "A decision suffers from 'clear error' only if
the record cannot support the findings that led to that ruling."
Bond v. Ingersoll-Rand Co., No. 08-3487, 2010 WL 5139857, at *4
(D.N.J. Dec. 10, 2010) (quoting United States v. Grape, 549 F.3d
591, 603-04 (3d Cir. 2008)).  "Thus, a party must do more than
allege that portions of a ruling were erroneous in order to
obtain reconsideration of that ruling; it must demonstrate that
(1) the holdings on which it bases its request were without
support in the record, or (2) would result in 'manifest
injustice' if not addressed."  Id. (quoting Grape, 549 F.3d at
603-04; N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194,
1218 (3d Cir. 1995)).

A motion for reconsideration may not be used to re-litigate
old matters or argue new matters that could have been raised
before the original decision was reached.  P. Schoenfeld Asset
Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J.
2001).  Mere disagreement with the Court will not suffice to
show that the Court overlooked relevant facts or controlling

10

law, <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp. 2d 339, 345 (D.N.J. 1999), and should be dealt with through the normal appellate process, <u>S.C. ex rel. C.C. v. Deptford Twp. Bd. of Educ.</u>, 248 F. Supp. 2d 368, 381 (D.N.J. 2003).

## B. Collateral Estoppel

Defendant argues the Court erred in finding collateral estoppel did not apply. Defendant articulates two overarching bases for the Court's alleged error: (1) the Court erred in the standard it applied in determining finality for the purposes of applying collateral estoppel and (2) the Court erred in considering the Settlement Agreement.

### 1. Finality

Defendant argues the Court applied an erroneous standard for determining finality for the purpose of finding collateral estoppel applicable. The Court applied the following law in determining finality:

> A "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." <u>In re Brown</u>, 951 F.2d 564, 569 (3d Cir. 1991) (quoting 1 Restatement (Second) of Judgments § 13 (1982)). "In determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." <u>Id.</u> Finality for purposes of collateral estoppel is a "'pliant' concept" which "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." <u>Id.</u> (quoting <u>Dyndul v. Dyndul</u>, 620 F.2d 409,

412 n.8 (3d Cir. 1980)).

> "Ordinarily, an order granting a motion to dismiss is an appealable final order . . . ." <u>Nationwide Ins. Co. v. Patterson</u>, 953 F.2d 44, 45 (3d Cir. 1991). The District of New Jersey has previously stated that "[w]hen a court grants a motion to dismiss and expresses its reasons for doing so in a written opinion, . . . the decision is considered final for purposes of collateral estoppel." <u>Rose v. Schultz</u>, No. 03-1684, 2007 WL 1160348, at *5 (D.N.J. Apr. 17, 2007).

The Court noted that, while the Eastern District of Pennsylvania decisions disposed of the associational discrimination claim, other claims remained and the litigation was ongoing at the time the decisions were entered. The Court concluded they did not constitute final judgments. In so holding, the Court cited <u>L.R. v. Manheim Twp. Sch. Dist.</u>, 540 F. Supp. 2d 603 (E.D. Pa. 2008), stating that "[a] partial grant of a motion to dismiss is not a final judgment, and thus is generally not appealable except by an interlocutory appeal under 28 U.S.C. § 1292." <u>Id.</u> at 608.

Defendant argues the Court erred by equating the finality needed for a decision to be appealable with the finality needed for collateral estoppel to apply, two standards this Court agrees are different. <u>See, e.g.</u>, <u>In re Brown</u>, 951 F.2d 564, 569 (3d Cir. 1991) ("Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable."). Defendant further argues "the Court conflated

12

the elements of issue preclusion with the more demanding requirements of claim preclusion, which does require the entry of a final judgment." The Court also acknowledges this difference. See id. Defendant anchors its argument in the Court's citation to L.R.

In determining the Eastern District of Pennsylvania decisions were not sufficiently firm, the Court considered that the decisions were not appealable. This is a permissible consideration in the Third Circuit, as the Court recognized in its October 19, 2017 Opinion. Id. ("In determining whether the resolution was sufficiently firm, the second court should consider . . . whether the decision could have been, or actually was, appealed."). Whether the decisions were appealable, however, was not determinative in the Court's decision. The Court's focus was predominantly on the fact that the litigation was ongoing in the Eastern District of Pennsylvania at the time those decisions were entered. The Eastern District of Pennsylvania's partial dismissal did not dissolve all claims against the defendant, nor did it determine whether there was in fact discrimination present. The partial dismissal was solely related to the associational discrimination claim. The Court's Opinion recognized that the issue of discrimination against the disabled individual remained, and this convinced the Court that the decision was not sufficiently firm for the Court to find

finality, despite the dismissal of the associational discrimination claim. The Court does not find clear error or a manifest injustice resulted from this decision.

While Defendant argues "the Court did not consider the policy implications of collateral estoppel" and that "all considerations of judicial economy and fairness are present," the Court determined that policy considerations did not change its finding on finality in its consideration of Defendant's original motion, and the Court does not find its decision constituted clear error or resulted in manifest injustice.

### 2. Settlement Agreement

Defendant argues the Court "erred by considering whether the parties intended for [the Eastern District of Pennsylvania decisions] to have issue preclusive effect by agreement in the settlement contract." Defendant seems to interpret this Court's Opinion to say that "an interlocutory decision can only have issue-preclusive effect in matters concluded by settlement if the parties so intend."

The Court begins by noting "[t]he doctrine of collateral estoppel . . . does not apply to settlement agreements." Blake v. Custom Mortg. Sols., Inc., No. 08-cv-1122, 2009 WL 722298, at *5 n.39 (E.D. Pa. Mar. 17, 2009). However, Defendant's objection misunderstands the context in which the Court considered the Settlement Agreement. The Court found, and

maintains here, that the Settlement Agreement is not directly
relevant in determining the preclusive effect of the Eastern
District of Pennsylvania written decisions.  Rather, having
already concluded that the Eastern District of Pennsylvania
decisions did not have preclusive effect, the Court examined the
Settlement Agreement to determine whether the parties, by
contract, agreed to give such decision preclusive effect.  The
Court stated:

> [T]he Settlement Agreement not only did not express an
> intent for collateral estoppel to apply to the earlier
> Eastern District of Pennsylvania decisions, but
> explicitly allowed Plaintiff to bring new claims after
> the two year period of the Settlement Agreement ended.
> Accordingly, the Settlement Agreement allowed for
> Plaintiff to bring an associational discrimination claim
> in this case.

In executing a settlement agreement, a party could agree to give
a decision preclusive effect that would not otherwise have
preclusive effect.  The Court's consideration of the Settlement
Agreement for such purpose was not in error.

### C. Associational Discrimination and Injunctive Relief Claims

Defendant argues the Court failed to apply the correct
pleading standard in allowing Plaintiff's associational
discrimination claim and injunctive relief claim to survive
Defendant's 12(b)(6) motion.

### 1. Associational Discrimination Claim

Defendant takes issue with the following portion of the

Court's decision considering the merits of the associational discrimination claim. The Court stated:

> While Plaintiff did not plead that the only reason M.M. was in daycare was so that M.M.'s parents could work, and while the factual allegations of the harm to the parents are admittedly barebones, it is axiomatic that daycare services exist for parents to have temporary relief from providing constant care for a young child, regardless of what a parent might use that time for. Given the broad statutory language creating an associational cause of action and the remedial purpose of the statute, the Court deems the denial of this type of service sufficient to state a valid claim asserted by a parent or other legal custodian.

The Court found that, "[a]t th[at] stage of the proceedings, Plaintiff ha[d] alleged sufficient facts to make out a plausible claim for associational discrimination."

Defendant argues "the Opinion concluded that to survive a motion to dismiss, such a claim requires allegations that the only reason M.M. was in 'daycare' was so that her parents could work. But the Complaint contains <u>no such allegations</u>." The Court rejects this interpretation of its decision.

In allowing Plaintiff's associational discrimination claim to move forward in this litigation, the Court applied the established standard for considering a Federal Rule of Civil Procedure 12(b)(6) motion: "At the motion to dismiss stage, a court must 'accept as true all of the allegations contained in a complaint,' make all reasonable inferences in favor of the plaintiff, and refrain from engaging in any credibility

determinations." U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 256 (3d Cir. 2016). "[A] party need not plead all facts in detail in order to move past the pleading stage." Aleynikov v. Goldman Sachs Grp., Inc., No. 12-5994, 2013 WL 5816941, at *6 (D.N.J. Oct. 29, 2013).

Having reviewed its Opinion and the applicable standard in deciding a motion to dismiss, the Court concludes it did not err in allowing Plaintiff's associational discrimination claim to survive the motion to dismiss. Plaintiff pleaded that "M.M. and M.M.'s parents were denied a full and equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Chesterbrook" and that "M.M. and M.M.'s parents were denied the services offered by Chesterbrook that are readily available to parents of other children without disabilities." The Court found that at the pleading stage, these allegations were sufficient to allow the Court to infer, as it may in considering a motion to dismiss, that M.M.'s parents placed her in daycare at least in part to confer a benefit on themselves. The Court's recognition that "the factual allegations of the harm to the parents [were] admittedly barebones" did not foreclose the Court from inferring such harm from those facts alleged where such an inference is

reasonable.[4]

The Court finds this section of Defendant's motion registers mere disagreement with the Court's Opinion. Indeed, the Court explicitly recognized the barebone allegations Defendant argues the Court overlooked.

**2. Injunctive Relief Claim**

Defendant takes issue with the following portion of the Court's decision:

> While the complaint does not make any allegations with regard to future violations of Title III of the ADA, either directed at M.M., her parents, or at others, the Court views the determination of this issue to be premature. Injunctions in any form are a form of remedy, and remedies only follow a successful claim. Accordingly, this issue is not ripe for adjudication in a matter still in the pleading stages.
>
> There is no question that the statute includes injunctive relief as a possible remedy, 42 U.S.C. § 12188(b)(2)(A), and here the claim is brought not by an individual plaintiff but by the United States under a statute in which Congress gave the Attorney General a broad mandate to investigate violations, undertake periodic reviews of covered entities, certify compliance, and bring civil actions to remedy violations. Id. § 12188. This case is in essence an enforcement action suggesting, at least in the view of Plaintiff, "an issue of general public importance." Id. § 12188(b)(1)(B).

---

[4] Defendant argues the Court's observation that daycare services exist to provide parents temporary relief from the constant care a child requires "is not supported by any allegation." Defendant argues "[t]he Court is not authorized to inject allegations into the Complaint." The Court does not find this to be an allegation that required pleading. It is a known and obvious result of putting a child in daycare that a parent is relieved of some of its parental responsibility for the period of time for which the child is in daycare, whether or not that is the intended benefit.

The Court has no occasion to assess whether that viewpoint is correct or any other aspect of the merits of Plaintiff's case, but the earlier skirmish in the Eastern District of Pennsylvania, the resulting settlement agreement, and this action taken together suggest Plaintiff's concerns over the operations of Defendant and its ongoing compliance with the relevant statute are not new. The Court is simply unable to say that injunctive relief should be precluded under such circumstances and certainly not before full discovery and the adjudication of the claims the Court has allowed to proceed.

Defendant argues "the Opinion concluded that a plaintiff is not entitled to prospective injunctive relief <u>unless</u> it alleges the likelihood of future harm," but that "the United States' Complaint contains <u>not a single allegation</u> concerning the likelihood of future harm – which the Court so found."

The Court does not find it erred here or that manifest injustice will result. "A district court should not dismiss a claim for injunctive relief at this early stage of the proceedings when such relief could prove to be appropriate." <u>Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cty.</u>, No. 06-1064, 2007 WL 1007968, at *9 (W.D. Pa. Mar. 30, 2007) (addressing a motion to dismiss a request for injunctive relief as overbroad); <u>see also</u> <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d 517, 550 (D.N.J. 2004) (addressing the defendant's argument that a request for injunctive relief was moot) ("This Court is loathe at this stage in the proceedings to curtail its broad equity powers to fashion the most complete

19

relief possible.  In short, while this Court may ultimately

agree with Defendants that claims for injunctive relief are

inappropriate, dismissal at this stage of the proceedings would

be premature).[5]

## IV. Motion for Certification of Appeal

Pursuant to 28 U.S.C. § 1292(b), "a district judge, in

making in a civil action an order not otherwise appealable," can

certify a non-final order for interlocutory appeal if "of the

opinion that such order involves a controlling question of law

as to which there is substantial ground for difference of

opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation."

"A motion for certification should not be granted merely

because a party disagrees with the ruling of the district

judge."  <u>Max Daetwyler Corp. v. Meyer</u>, 575 F. Supp. 280, 283

(E.D. Pa. 1983).  "[Q]uestions about a district court's

application of facts of the case to established legal standards

are not controlling questions of law for purposes of section

---

[5]    The Court rejects any allegation that the Court's decision
was a result of its view that "Chesterbrook [i]s a bad actor[]"
and is unable to discern the foundation for such a claim.  The
Court's denial of a motion to dismiss is not an adjudication or
finding on the merits nor an expression of any kind as to the
veracity of the allegations of a complaint by any plaintiff.
The parties are left to their proofs and it will ultimately be
left to a factfinder and the faithful application of the law to
determine whether any party discharged or ignored its legal
obligations.

1292(b)." <u>Morgan v. Ford Motor Co.</u>, No. 06-1080, 2007 WL
269806, at *2 (D.N.J. Jan. 25, 2007)

Defendant asks the Court to certify the following
questions:

    1.    Whether collateral estoppel should attach to an
          interlocutory order that is not immediately
          appealable under 28 U.S.C. § 1291 but otherwise
          satisfies the elements of collateral estoppel;

    2.    Whether a motion to dismiss should be granted if
          the Complaint contains no allegations supporting
          essential elements of claims, and the Court makes
          an express finding that the complaint does not
          contain sufficient allegations; and

    3.    Whether a motion to dismiss an associational
          discrimination claim by non-disabled parents of a
          disabled child, who was allegedly disenrolled from
          a pre-school on the basis of her disability, where
          no discrimination is alleged to be directed to the
          parents and their only alleged injuries derive from
          such disenrollment, should be granted.

Defendant's first request for certification – on the issue
of collateral estoppel – rests on Defendant's misunderstanding
that this Court declined to apply collateral estoppel solely
because the Eastern District of Pennsylvania decisions were not
immediately appealable. Rather, this was a consideration that
factored into the Court's decision, and is a consideration
permitted by Third Circuit precedent. The Court did not rest
its collateral estoppel decision entirely on this point and
certification of this question would accordingly be improper.

Defendant's second request for certification – on the issue

21

of the Court's standard in deciding the motion to dismiss –
misconstrues the Court's Opinion.  Defendant frames the issue by
stating that the Court expressly found Plaintiff's Complaint did
"not contain sufficient allegations," but nonetheless declined
to dismiss the associational discrimination claim.  As discussed
with reference to the Motion for Reconsideration, this was not
the decision of the Court.  The Court found sufficient factual
allegations to sustain the claim as plausible.

As to Defendant's third request for certification – on the
issues of whether M.M.'s alleged injuries were sufficient for an
associational discrimination claim – the Court finds this to be
a question of the Court's application of the facts of this case
to a legal standard that is not being disputed, i.e., that the
non-disabled individual must suffer a separate injury.  Whether
Plaintiff's injury constitutes such an injury is not a question
of law.

In any event, the Court concludes that certifying any of
these questions would not materially advance the termination of
this litigation.  "Practical considerations guide a court's
determination of whether an interlocutory appeal will materially
advance the ultimate termination of the litigation."  Children
First Found., Inc. v. Legreide, No. 04-2137, 2005 WL 3088334, at
*10 (D.N.J. Nov. 17, 2005).  "If the moving party shows that an
immediate appeal would (1) eliminate the need for trial, (2)

reduce the extent or cost of discovery, or (3) simplify the trial by eliminating complex issues, the Court can conclude that section 1292(b) certification would materially advance the ultimate termination of the litigation." Id. "The Court, however, must also bear in mind the policy of the federal courts against piecemeal appeals and their inherent delays." Id.

The associational discrimination claim is not the only issue in this case. Thus, a favorable ruling on appeal would not result in the elimination of the eventual need for a trial as this case progresses. The discrimination faced by M.M. and her injury still must be adjudicated. For that same reason, the Court is not convinced that certification and a favorable ruling would so greatly reduce the extent or cost of discovery, as this Court is convinced discovery will focus most on the actual discrimination. The added discovery on the issue of the injury felt by the parents will be less extensive. While the elimination of a particular issue will necessarily simplify trial, the Court does not find the associational discrimination claim to be an overly complex one. The same is true for the injunctive relief claim.

As 28 U.S.C. § 1292(b) certification is "wholly within the discretion of the courts, even if the criteria are present," Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976), even if this Court were to find this was a case eligible for

certification, the Court declines, in its discretion, to grant Defendant's motion here.

## V. Conclusion

For the aforementioned reasons, the Court will grant Defendant's Motion for Leave to File Reply, deny Defendant's Motion for Reconsideration, and deny Defendant's Alternative Motion for Certification.

An appropriate Order will be entered.


Date: _May 9, 2018_          _s/ Noel L. Hillman_
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.