```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>NOBEL LEARNING COMMUNITIES<br>d/b/a CHESTERBROOK ACADEMY,<br><br>        Defendant. | CIVIL No. 17-366 (NLH/JS)<br><br>**OPINION** |

**APPEARANCES**:

JORDAN MILOWE ANGER
DAVID V. SIMUNOVICH
OFFICE OF THE U.S. ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NJ 07102

    *On behalf of Plaintiff United States of America.*

BONNIE M. HOFFMAN
ANDREW M. ERDLEN
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
20 BRACE ROAD
SUITE 201
CHERRY HILL, NJ 08034-2634

    *On behalf of Defendant Nobel Learning Communities d/b/a Chesterbrook Academy.*

**HILLMAN, District Judge**

    This case concerns Defendant's alleged violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"). Presently before the Court is Defendant's Objection to Discovery Order Pursuant to Federal Rule of Civil Procedure 72.

Defendant's Objection will be denied for the reasons that follow.

**BACKGROUND**

The Court takes its facts from Plaintiff's January 18, 2017 complaint and various letters, opinions, orders, and transcripts concerning the discovery dispute.  Defendant Nobel Learning Communities ("NLC") is the owner and operator of the Chesterbrook Academy ("Chesterbrook") in Moorestown, New Jersey ("Chesterbrook Moorestown").  Chesterbrook offers daycare services and an educational foundation program for young children in several states.  M.M., born on July 11, 2011 with Down syndrome, enrolled at Chesterbrook Moorestown on January 5, 2012.

Generally, at Chesterbrook, diaper-changing services are provided to children enrolled in its "Infants," "Toddlers," and "Beginners" programs.  Diaper-changing services are not provided to children enrolled in its "Intermediates" or "Pre-K" programs.

In December 2014, Chesterbrook Moorestown informed M.M.'s parents of its intention to move M.M. into the "Intermediates" program.  At this time, M.M. still required diapers.  M.M. was moved into the "Intermediates" program on January 21, 2015.  Chesterbrook Moorestown worked with M.M. to try to get her toilet trained, setting a deadline pursuant to their alleged corporate policy for M.M. to be toilet trained by April 1, 2015.

On March 26, 2015, Chesterbrook Moorestown informed M.M.'s parents that M.M. was being expelled effective April 1, 2015 because she was not toilet trained.  Plaintiff alleges the real reason for M.M.'s expulsion was her disability.  M.M.'s last day was March 31, 2015.

Plaintiff brought a claim under Title III of the ADA asking for a declaration that Defendant violated Title III of the ADA, for Defendant to be enjoined from engaging in discrimination against individuals with disabilities and from failing to comply with Title III of the ADA, for an award of compensatory damages to M.M. and M.M.'s parents, and for a civil penalty against Defendant to vindicate the public interest.

Defendant filed its Motion to Stay or, Alternatively, for Partial Dismissal on March 24, 2017.  Defendant argued, in part, that the request for injunctive relief was too broad and not based upon sufficient factual allegations.  Defendant insisted that the complaint only concerns one individual and one facility – not a nationwide wrong.  After being fully briefed, this Court decided in an October 19, 2017 Order and Opinion that it was premature to dismiss the request for injunctive relief.  In doing so, the Court opined that full discovery was necessary and that only after liability was determined on all claims could it determine whether to grant injunctive relief.

As the parties entered the discovery phase of this case, a

disagreement sparked over the proper scope of discovery. Plaintiff asserted (based on Defendant's admissions) that NLC did not have a corporate policy concerning toilet training, but rather had a general practice – with exceptions – of not permitting diapering in the Intermediate classrooms.  Plaintiff wished to explore this assertion and served various discovery requests upon Defendant relating to this policy.  These discovery requests sought information for the five years preceding the expulsion of M.M. and specified various Chesterbrook facilities in Pennsylvania, New Jersey, and Maryland run by NLC.  Defendant resisted these discovery requests on grounds that the only permissible scope was one limited to the two-year time period preceding the expulsion of M.M. and the Chesterbrook Moorestown facility.

Because the parties could not resolve this issue on their own, the discovery dispute was presented to United States Magistrate Judge Joel Schneider through letters in April 2018 from both parties.  On April 10, 2018, Judge Schneider held oral argument.  Judge Schneider ruled orally at the hearing and distilled his rulings into a written order filed on April 17, 2018.  This Court will discuss the details of the oral ruling as relevant, <u>infra</u>.  Generally, however, Judge Schneider ruled that discovery was appropriate into facilities other than Chesterbrook Moorestown for children other than M.M. and for

five years preceding the incident.

On April 30, 2018, Defendant NLC filed an objection to Judge Schneider's ruling. This objection has been fully briefed by both parties and is ripe for adjudication.

**ANALYSIS**

**A.    Subject Matter Jurisdiction**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under Title III of the ADA.

**B.    Rule 72 Standard**

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the court pursuant to 28 U.S.C. § 636(b)(1)(A). See also L. Civ. R. 72.1(a)(1). Federal Rule of Civil Procedure 72 provides litigants with a mechanism to object to a non-dispositive ruling made by a magistrate judge. A party may file a timely objection to a magistrate judge's order with the district judge on the case. FED. R. CIV. P. 72(a); L. Civ. R. 72.1(c)(1). The standard of review of a magistrate judge's decision depends on whether the motion is dispositive or non-dispositive. A district court judge will only reverse a magistrate judge's opinion on non-dispositive matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." S. Seas Catamaran, Inc. v. M/V Leeway, 120 F.R.D. 17, 21 (D.N.J. 1988) (citation omitted). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998). The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law. Exxon Corp. v. Halcon Shipping Co., Ltd., 156 F.R.D. 589, 591 (D.N.J. 1994).

**C.   Rule 26 Standard**

The scope of discovery in a federal action has been described as "unquestionably broad." Zampetis v. City of Atl. City, No. 51-cv-1231 (NLH/AMD), 2018 U.S. Dist. LEXIS 187937, at *6-7 (D.N.J. Nov. 2, 2018) (citing Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999)). Federal Rule of Civil Procedure 26(b)(1), which generally governs the scope of discovery, states:

6

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

"District Courts have wide discretion in matters of case management and discovery." Hill v. Barnacle, No. 17-2448, 2018 U.S. App. LEXIS 25944, at *4 (3d Cir. Sept. 13, 2018) (citing ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 268 (3d Cir. 2012)). It is under these legal standards that this Court will review Judge Schneider's decision.

**D. Defendant's Rule 72 Objection**

Defendant NLC argues that three reasons require this Court to overturn the decision of Judge Schneider. This Court will address each argument in turn.

   a. Whether the October 19 Opinion Approves Discovery on the ADA Claim Made

First, NLC argues that Judge Schneider's April 17 Order erroneously interpreted this Court's October 19th Opinion by determining incorrectly that the Opinion opined on the scope and type of discovery available. NLC argues the October 19th Opinion (as relevant to the present issue) only determined the

7

merits of its Motion to Dismiss, not what discovery may be granted.

NLC is correct. The Court's October 19th Opinion did not opine on the precise scope and type of discovery available and was not intended to usurp Judge Schneider's role in that process. The Opinion was one concerning a motion to dismiss; no discovery issues were presented to this Court for adjudication. This Court's determination that dismissal was unwarranted and that the matter should proceed to "full discovery" after denying that motion is not the same as determining what discovery is necessary or appropriate under the unique circumstances of this case.

There is nothing in this record to suggest Judge Schneider misapprehended his full role in guiding discovery within his discretion and the governing rules of procedure. Nor was it incorrect for Judge Schneider to review and to take into consideration this Court's determinations on Defendant's Motion to Dismiss. This Court finds no evidence within Judge Schneider's oral or written discovery rulings showing he believed this Court had predetermined the type or scope of discovery and was therefore bound by such rulings. Judge Schneider merely reviewed the October 19th Opinion in conjunction with his rulings on discovery to insure consistency with this Court's rulings and the law of the case and then

thoughtfully and methodically supported his ruling on independent and substantial grounds. Accordingly, this Court finds Defendant's first argument does not show that Judge Schneider's opinion was clearly erroneous or contrary to law and this Court will not disturb his discovery ruling on this ground.

      b. <u>Whether a Factual Basis Exists in the Complaint to Support Discovery</u>

Next, NLC argues that a prayer for relief – here the prayer for injunctive relief – cannot alone support discovery. Instead, NLC argues, discovery must be supported by factual allegations within the complaint. NLC asserts that the only basis for Judge Schneider's discovery ruling was the prayer for relief. Assuming the veracity of Defendant's argument, the complaint provides sufficient factual allegations.

The complaint contains numerous allegations that Defendant did not challenge at the motion to dismiss stage and neglects to discuss now. The complaint alleges that the "Attorney General has commenced this action based on a determination that a person or group of persons has been discriminated against" at NLC. (Compl. ¶ 2.) Moreover, it states that "NLC discriminated against individuals on the basis of disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III." (Compl. ¶ 29.) It also states that it failed to "make

reasonable modifications . . . to individuals with disabilities" and that "[i]ndividuals were aggrieved by Defendant's discriminatory actions." (Compl. ¶ 29(a), (d).)

Whether Defendant now believes those allegations are conclusory or not, the complaint was allowed to move forward without challenge to the nature of those allegations. Those factual allegations support Plaintiff's request for discovery beyond Chesterbrook Moorestown as the allegations appear to relate to Chesterbrook in general, not just its location in Moorestown. As Defendant admits, "[i]t is a fundamental principle of Civil Procedure that a party may only take discovery to develop its factual allegations." This Court does not find that Judge Schneider's decision allowing the discovery related to extant factual allegations in the operative complaint to be clearly erroneous or contrary to law.

Even if that decision was clearly erroneous or contrary to law on the above ground, that error was harmless as another, independent basis exists supporting the grant of discovery. See Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Judge Schneider did not rely only upon the request for injunctive relief in granting Plaintiff's discovery request. The transcript of the hearing reveals four reasons upon which Judge Schneider based his

10

decision: (1) to determine whether an accommodation was reasonable, (2) to determine whether a corporate policy or practice existed, (3) to determine the merits of Plaintiff's request for corporate-wide relief, and (4) to allow discovery because this Court denied Defendant's Motion to Dismiss the company-wide injunction. As discussed in more detail infra, Judge Schneider advanced separate reasons that could have each independently supported the discovery ordered. On that basis, this Court also finds that Judge Schneider's decision is not clearly erroneous or contrary to law.

    c. Whether the Claims in this Case May Limit Discovery

Next, NLC argues Plaintiff may not use discovery to identify similarly situated persons. NLC asserts that this case is limited to a claim concerning reasonable modification, not disparate treatment. As a result, Defendant argues the only relevant discovery must be related to the treatment of M.M. at the Chesterbrook Moorestown facility. Plaintiff counters that it has pleaded a claim affording it the right to take discovery on comparators: a disparate treatment claim. Plaintiff points to the statutory text of the ADA and its complaint to show it should be allowed discovery into how NLC treated others at various Chesterbrook facilities.

Defendant claims to have cited numerous cases for the proposition that reasonable accommodations cases are different

11

than disparate treatment cases and – of utmost importance in this case – reasonable accommodations cases do not permit the discovery of comparators. The case law cited does not bear out this argument. This Court will address each case in turn.

Defendant first cites PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001) for the proposition that comparator discovery is irrelevant in a reasonable modification case. The case concerned a golfer with a degenerative circulatory disorder who requested to use a golf cart during official competitions. Id. at 668-70. The case does not stand for the proposition Defendant asserts it does. The portion cited by Defendant relates to the duty of the defendant – when an accommodation is requested by an individual with a disability - to make "an individualized inquiry . . . [into] whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person." Id. at 688.

The Supreme Court, as Plaintiff properly pointed out, did not opine on the type or scope of discovery in ADA reasonable accommodation cases. In fact, contrary to Defendant's contentions, the Supreme Court compared the plaintiff in the case to golfers with lesser disabilities or no disabilities (and even considered the practices of the Senior PGA Tour) in order to determine whether an accommodation was reasonable. Id. at

682, 686.[1] This tends to show comparator evidence may be probative, not irrelevant as Defendant asserts.

The cases cited in Defendant's reply brief are also unpersuasive. None of the cases are within this Circuit or District, nor do they opine on the issue at hand – comparator discovery in an ADA reasonable accommodations case. One case finds error in a district court opinion analyzing a reasonable accommodations case under the McDonnell-Douglas burden-shifting test used for a disparate treatment case. Bultemeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281 (7th Cir. 1996). Another case distinguishes what evidence is needed to propel an ADA reasonable accommodation claim and an ADA disparate treatment claim past summary judgment. Coleman v. Keebler Co., 997 F. Supp. 1102 (N.D. Ind. 1998). A third discusses whether a plaintiff must compare himself or herself with others in order to prove a reasonable accommodation case. McGary v. City of

---

[1] This Court understands the interpretation of Martin as requiring an individualized assessment into whether a reasonable accommodation should be made. See Starego v. New Jersey State Interscholastic Athletic Ass'n, 970 F. Supp. 2d 303, 308-09 ("[I]n order to comply with the ADA . . . the Supreme Court mandated that an individual inquiry must be undertaken."). But, the Starego case did not discuss discovery obligations. And, even in Starego, comparison was made to students without disabilities. Id. at 317 ("Indeed, the Court's focus is on whether Anthony was provided with equal access and opportunity to play football afforded to every other student without a disability. That is the very essence of the ADA."). Again, this case does not say comparator evidence is irrelevant, just that an individualized assessment must, at least, be made.

13

Portland, 386 F.3d 1259 (9th Cir. 2004); see also Olmstaed v. Zimring, 527 U.S. 581 (1999); Page v. Cnty. Of Madera, No. 1:17-cv-849, 2017 U.S. Dist. LEXIS 199127 (E.D. Cal. Dec. 4, 2017). This third line of cases does stand for the proposition that comparator evidence is not necessary to prove an ADA violation, as even "facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced." Id. at 1265; see also Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003) ("We have long recognized that the basic analytical framework of the ADA includes such a comparative component . . . . It does not follow, though, from this framework that a plaintiff must also demonstrate disparate impact in all cases.").

But to say evidence is unnecessary is not the same as saying it may not be relevant. This Court will let the statute be its guide. The relevant text of the ADA for this reasonable modification claim, 42 U.S.C. § 12182(b)(2)(A)(ii) states that "discrimination" includes:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

(emphasis added).

Defendant has stated it has a general, national practice concerning toilet training. This practice is not reduced to writing, but is only evidenced by actions taken concerning specific children. Therefore, Plaintiff may only discover the actual practice at Chesterbrook facilities by determining what was done to specific children in similar scenarios. Discovery related to that practice is immediately relevant and Judge Schneider was correct in ordering it.

Moreover, this discovery may relate to whether modification is reasonable. Whether Defendant has made exceptions to this general practice may help determine whether the modification requested was reasonable or whether it was an undue burden or a fundamental alteration. Surely, this type of discovery will be beneficial to the ultimate factfinder in determining what is reasonable. That determination cannot be made in a vacuum. Again, Judge Schneider's decision was not clearly erroneous or contrary to law.

Even if this discovery is somehow not relevant to this reasonable accommodation claim, Plaintiff has also claimed that disparate treatment occurred under 42 U.S.C. § 12182(b)(1)(A). Two portions of that subsection (ii) and (iii) specifically make mention of whether the accommodation is "not equal to that afforded to other individuals" or "different or separate from that provided to other individuals." Defendant admits that

15

comparators are relevant to a disparate treatment claim.

Defendant's only argument – on relevancy – is to argue that Plaintiff did not allege or properly allege a disparate treatment claim.  It is unpersuasive.  Plaintiff has alleged that M.M. was expelled from Chesterbrook Moorestown because of her disability, not because of her toilet training.  In other words, M.M. was treated differently because of her disability.  Plaintiff has pleaded a disparate treatment claim.  Defendant had the opportunity to present arguments in favor of dismissal of the disparate treatment claim, but did not do so.  This is the improper place to litigate the merits of this claim.  This Court finds that Judge Schneider's opinion is neither clearly erroneous nor contrary to law on this ground.

Finally, Defendant also cites Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54 (D.N.J. 1996) and Bell v. Lockheed Martin Corp., 270 F.R.D. 186 (D.N.J. 2010) to argue that the time period for discovery is too broad.  These cases were brought under different statutes and different factual scenarios.  How those cases apply here to limit this case is unclear from Defendant's argument.  Moreover, those decisions were not made on relevance grounds, which is the focus of Defendant's argument here.[2]  Neither opinion sheds any light on

---

[2] The citation to United States v. Univ. of Neb. at Kearney, No. 4:11CV3209, 2014 U.S. Dist. LEXIS 118073 (D. Neb. Aug. 25, 2014)

the relevance of this discovery – based on the time period at issue – in this case.[3]  Accordingly, this Court again finds Judge Schneider's decision was not clearly erroneous or contrary to law.

**CONCLUSION**

For the reasons stated in this Opinion, this Court will deny Defendant's Objection.

An appropriate Order will be entered.

Date:  December 19, 2018           s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

is equally unpersuasive, as the decision to deny discovery to the United States was made on proportionality, not relevancy grounds.

[3] This Court will not address in detail the remainder of Defendant's arguments in its reply brief.  The argument as to the ordered discovery's relevance to NLC's defenses and an earlier lawsuit brought by the United States are mooted by the findings in the above opinion.  The argument as to proportionality is not properly before this Court and it will not be decided in this Opinion.